Judge Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) NO. CR11-5233RBL |
| Plaintiff, | ) |
| v. | ) DEFENDANT ALLOWAY'S |
| | ) MOTION TO SUPPRESS |
| | ) EVIDENCE SEIZED IN 11/18/2010 |
| | ) SEARCH; MEMO IN SUPPORT |
| ROY ALLOWAY, | ) |
| | ) NOTED: 2 September 2011 |
| Defendants. | ) Evidentiary hearing requested |
| _____ | ) |

## MOTION

**COMES NOW Roy Alloway**, by and through counsel Robert Goldsmith, for the reasons set forth below, moves to suppress the seizure of all evidence seized from his home and property at 9468 Phillips Rd. SE, Port Orchard, WA, done on November 18, 2010, and all fruits thereof, based upon the attached search warrant and the affidavit of Agent Heidi Wallace. (Attached as Exhibit A.)  This motion is based on the Fourth Amendment to the U.S. Constitution, *Franks v. Delaware,* 438 U.S. 154 (1978) and the following memorandum in support.

Dated 23 Aug. 2011.                                        Respectfully submitted,


/s/ R. Goldsmith
Robert Goldsmith, WSBA #12265
Email: Bobgoldsmith2@juno.com
Attorney for Roy Alloway

Motion to suppress - 1

ROBERT W. GOLDSMITH
*Attorney at law*
705 Second Ave.
Seattle, WA  98104
(206) 623-2800

**MEMORANDUM OF LAW**

**STATEMENT OF FACTS**

The defendant is charged in with one count of unlawful dealing in firearms without a federal firearms license (FFL) in violation of 18 U.S.C. § 922(a)(1)(A).  That statute makes it unlawful "for any person except a licensed importer, licensed manufacturer or licensed dealer to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce."   The essence of the charge against Mr. Alloway is that he was a dealer under 18 U.S.C. § 921(a)(11)(A) who was "engaged in the business of selling firearms at wholesale or retail" without a license.  18 U.S.C. § 921(a)(21)(C) defines "engaged in the business" as "a dealer in firearms, . . . a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms."

On November 17, 2010, ATF special agent Heidi Wallace applied for a search warrant to search the homes of four individuals, including Roy Alloway.  Her affidavit in support of the application was signed on November 17, 2010, at 3:45 p.m.  (See p. 38 of 53 in Exh. A.)  The warrant was signed on 11/17/10 at 3:45 p.m. as well. (see p. 39 of 53 in Exh. A); the return on the search warrant indicates the search was executed on 11/18/2009 at 1600. (See p. 40 of 53 in Exh. A.)  However, it appears that this warrant did not list "firearms" as something the government could seize.  (See Attachment B-2, at p. 41 of 53.)  Thus it appears that a second warrant was issued on 11/18/2009 at "6:15 P," as this warrant has Attachment B-2, which lists "firearms" under items to be seized. (At  pp. 42-43 of 53 in Exh. A.)  The

**Motion to suppress - 2**

ROBERT W. GOLDSMITH
*Attorney at law*
705 Second Ave.
Seattle, WA  98104
(206) 623-2800

catch is that no affidavit or other material has been filed or provided which supports this second warrant.

In the first three paragraphs of the affidavit Agent Wallace recites her experience and describes the four individuals' residence addresses.  ¶¶ 4, 5, and 6 describe the law as recited above and the ATF form requirements of a sale by a licensed firearm dealer.  ¶ 7 summarized a general overview of "unlawful firearm dealing" at local gun shows in Western Washington.  ¶¶ 8 – 51 deal with the Skiles and Gussoni investigation and ¶¶ 69 – 112 pertain to the Devenny investigation.

¶ 52 recites that Alloway is a former police officer who retired in May 2010; that at some time in 2006 ATF agent Brad Devlin contacted Alloway and Troy Wiktorek due to the volume of guns they were selling at gun shows and explained they were violating the criminal law (that Alloway is currently charged with.)  This is not accurate.  To begin with, the meeting occurred on March 10, 2005, and the agent told Alloway that they should limit themselves to buying one handgun a week or they could face internal investigation not criminal charges.  (See declaration of Roy Alloway attached as Exhibit B.)

¶ 53 indicates that Alloway and Wiktorek applied on 8/16/2006 for a federal firearms license (FFL) doing business as Renegade Guns and Loans, LLC., and that they both signed the application form.  The form has a question: "Do you intend to use your license only to acquire personal firearms?"  The "no" box is marked.  However, it is not true that Alloway signed this form, only Troy Wiktorek did.  (FFL application attached as Exhibit C.)

¶¶ 54 – 56 describe a meeting in October 2006 Alloway and Wiktorek had with an ATF inspector as part of the FFL application and the various laws and regulations as they apply to FFL's.

¶ 57 indicates that based on multiple sales records, Alloway purchased 26 firearms from 2004 to 2006 and 40 firearms from 2006 to November 2010.

¶ 58 recites what is on an ATF form 4473, including the warning that "repetitive purchases of

**Motion to suppress - 3**

firearms for the purpose of resale for livelihood and profit without" an FFL is illegal.  This paragraph then concludes that Alloway "knew his actions were "engaging in the business" and therefore needed a license."  This is a conclusory inference of Alloway's mental state and is not true.   See Exhibit B.

¶ 59 describes a sale by Alloway to an undercover ATF agent of two firearms on 7/18/2009.  It also mentions he gave the agent a "business card," with a phone number listed not to Renegade Guns and Loans, LLC.  It also alleged that Alloway stated that "some of the firearms were used, but others were in in "like new" condition."  This is not true, as the agent's own report indicates that "Alloway stated his firearms were used, but some were in like-new condition."  (Agent's report attached in Exhibit D; Alloway declaration: "all of his firearms were used.")  Glaringly omitted from this paragraph are Alloway's asking prices of the two firearms that were sold.

¶ 60 summarizes a sale by Alloway to an ATF undercover agent of one Glock, model 21, with night sights and ammunition for $550 on October 24, 2009, at a gun show in Puyallup, WA.  Again omitted from this is the price tag of $575 for the Glock, model 21, alone.  According to the video/audio cd of this sale, the agent offered $525, they settled on $550 with the ammunition as part of the final deal.

¶ 61 is about a sale by Alloway to an ATF undercover agent of one Keltec .223 caliber pistol on 11/14/2009, at a gun show in Puyallup.  It fails to mention that the price tag was for $575 and the purchase price was $550.  (See relevant portion of agent's report in Exhibit D.)

¶ 62 describes an ATF investigation that showed that Alloway purchased 163 firearms from November 2006 through May 10, 2010 from Renegade Guns and Loans in his individual capacity; and the majority of the sales occurred the same day or within one day of the acquisition by Renegade Guns and Loans.

¶ 63 further details that Alloway purchased a variety of long guns and handguns from May 2009 to

**Motion to suppress - 4**

ROBERT W. GOLDSMITH
*Attorney at law*
705 Second Ave.
Seattle, WA  98104
(206) 623-2800

April 2010.  He bought 30 long guns and since January 2005 and he bought 224 handguns from Renegade Guns and Loans and other various FFL's.

¶ 64 explains that Alloway was seen at multiple gun shows and was selling firearms as a private seller each time.  No paperwork was filled out by Alloway during his sales to the ATF agents and his tables were typically set up next to those from Renegade Guns and Loans.

¶ 65 asserts that the Glock sold to the ATF agent on 10/24/2009 was acquired by Renegade Guns and Loans on 10/8/2009, and sold to Alloway on the same date.  This fact is then used to infer that of the other 163 firearms bought from Renegade Guns and Loans, Alloway sold other firearms "in the same fashion."  This allegation is an inferential argument and not necessarily factual, since it is based on one instance.

¶ 66 alleges that Alloway is buying firearms from Renegade Guns and Loans, "transferring them to himself" and selling them "under the guise of "private sales."  It also contains the generalization that "attending every gun show and selling a high volume of firearms" is not consistent with the sale from one's personal collection.  This paragraph neither specifically asserts that Alloway is attending every gun show nor that he is selling a high volume of firearms, since there is no evidentiary foundation for these assertions.  As well, there is nothing illegal about Alloway making personal purchases of firearms from Renegade Guns and Loans and then later selling them—as long as he is not running a business.

¶ 67 states that Alloway's tables typically had from 40-60 firearms and that is a "high number of firearms to be selling from gun show to gun show without using a license."  This is an inflated number of firearms for starters.  (See Exhibit B.)  It also presumes that showing any number of firearms means they are for sale.  In fact, collectors such as Alloway, frequently display their firearms just to show off their collections to other aficionados, in the same way car collectors display their vehicles.

**Motion to suppress - 5**

¶ 68 concludes that other people without a license rarely displayed as many firearms as Alloway did; that Alloway had easier access to guns through the FFL; and that Alloway "most likely is not paying more than the shop paid" so that Alloway makes a profit more easily.  Although unstated in this paragraph, the FFL or shop presumably is Renegade Guns and Loans.  This paragraph is completely conjectural.  Alloway actually dropped out of Renegade Guns and Loans in early 2007, so any allegations regarding using the business for personal purchases after that date are inaccurate.  (See Exhibit B.)  More significantly, the statement about buying the firearms from Renegade Guns and Loan at cost was untrue.  According to an ATF interview of Renegade Guns and Loans owner Troy Wiktorek on December 10, 2010, Wiktorek told them he gave Alloway a good deal on sales but it was the same to other friends.  In fact Wiktorek always made money and "never sold the firearms to Alloway or other friends at his own cost."

Finally, the affidavit omits one other encounter Alloway had with an undercover ATF agent on 12/9/09, where the agent asked Alloway about a special order for a firearm and Alloway declined because "he did not have a license and did not do special orders."  (Relevant portion of report attached in Exhibit D.)

**ARGUMENT**

**A.  LIES, MISSTATEMENTS AND OMISSIONS CAN INVALIDATE A WARRANT.**

The Fourth Amendment states that "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  If facts alleged in the affidavit supporting issuance of the warrant are false or misleading, then the warrant may not establish probable cause and hence violate the Fourth Amendment.  *Franks v. Delaware*, 438 U.S. 154, 165 (1978).  "[I]t would be an unthinkable imposition upon his [the issuing judge's] authority if a warrant affidavit, revealed after the fact to contain a

**Motion to suppress - 6**

ROBERT W. GOLDSMITH
*Attorney at law*
705 Second Ave.
Seattle, WA  98104
(206) 623-2800

deliberately or reckless false statement, were to stand beyond impeachment." *Id.* Thus, the Supreme

Court recognized that a warrant could be challenged if based on deliberately or recklessly false

statements. *See also, United States v. Kyllo,* 37 F.3d 526, 529 (9th Cir. 1994).

The Ninth Circuit has expressly extended the *Franks* requirement to omissions.  See *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985) ("we expressly hold that the Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead.")  If a court determines that a warrant is based on false statements or reckless omissions, the affidavit must be "purged of those falsities and supplemented by the omissions." *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir.1985). The Ninth Circuit stated: "We must determine, therefore, whether the affidavit, once corrected and supplemented, would provide a magistrate with a substantial basis for concluding that probable cause existed."

**B.  A SUBSTANTIAL PRELIMINARY SHOWING IS SUFFICIENT FOR A HEARING.**

A defendant is entitled to an evidentiary hearing when the defendant can show that an affidavit used to secure a warrant contains false or misleading information.  *Franks v. Delaware,* 438 U.S. 154 (1978).  A *Franks* hearing, as it is known, does not require clear proof, but rather only a substantial preliminary showing. *See United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.), *amended*, 769 F.2d 1410 (9th Cir. 1985).  "By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *Stanert*, 762 F.2d at 781

Here, we assert that less than the total story was told so as to manipulate the inferences the magistrate drew in this case.  It is also disturbing that the facts supporting the search of Alloway's home were thrown into the same affidavit for three other, unrelated individuals.  The allegations against the

Motion to suppress - 7

other individuals included sales of guns to prohibited persons—something that the government has not

accused Alloway of.  So, right off the bat, the justification for the search of his home is muddied by the

dirtier facts of the other cases.

In Alloway's case, the only basis for probable cause that a *crime* was committed is that

Alloway was buying and selling firearms in the context of conducting a business.  The fact that he

bought or sold firearms is not something worthy of investigation unless he is doing it as a business.  In

fact there is no legal limit on how many firearms a person may buy and own.  Thus, despite the number

of firearms that Alloway purchased, it does not prove he is selling them.  So the affidavit not only has to

establish that he is buying firearms, it must also establish that he is doing it as a business and then

selling them.  To make the 'business' prong, as defined in the statute, the affidavit must show a "profit

or livelihood" purpose under § 921(a).  Thus, essential to any business endeavor is what the business

paid for an item and what in turn it sold it for.  And that is precisely where the declaration either

misleads, misstates or omits.

As detailed above, for each of the four firearms sold by Alloway to the government, the

affidavit intentionally omits his asking price and the lower sale price.  Those are the only four sales

alleged.  Other than a number of purchases, there is no other evidence of selling, much less selling at a

profit.  Alloway could have purchased a 1,000 firearms and if he stored them all at his house, that would

not mean he was in business.  Thus the allegation alone—that he bought several hundred firearms over a

five year period—does not show he is in business, not if the government only can show the sale of 4

firearms.  Instead, the whole affidavit is tilted and biased toward the government's theory that he is in

business.  Most significantly, the conclusion which forms the core of the government's theory that he

must be in business because—he  "is most likely not paying more than the shop paid"—is false!

**Motion to suppress - 8**

The affidavit makes the following specific omissions and/or errors:

1. The initial meeting with Agent Devlin is misreported.

2. Alloway never signed the FFL application.

3. Alloway did not "know" his actions were engaging in business.

4. All of Alloway's firearms were used, not some.

5. No asking price for the 7/18/2009 sales of the firearms is noted.

6. For the 10/24/2009 sale, the asking price and the negotiation for a lower price with the ammunition thrown in are omitted.

7. For the 11/14/2009 sale, both the asking price and the lower sale price are omitted.

8. The 12/5/2009 encounter where Alloway declines to sell by special order is totally omitted.

9. The inference that since one sale occurred within three weeks of the purchase of a firearm, then 163 firearms must have been sold in the same fashion is spurious.

10. The allegations of ¶ 66 ("attending every gun show selling a high volume") are misleading since it implies that Alloway did this, but provides no evidence of it.

11. The allegation of ¶ 67 that all of the 40-60 firearms were actually for sale is misleading.

12. The allegation that Alloway was purchasing firearms at cost is false.

Based on this lengthy list of falsehoods and omissions, we believe a substantial preliminary showing has been made, entitling defendant to a *Franks* hearing.

### C. REMOVING THE MISLEADING AND FALSE ALLEGATIONS AND ADDING IN THE OMISSIONS VITIATES A FINDING OF PROBABLE CAUSE HERE.

When evaluating the sufficiency of an affidavit under the a *Franks* suppression inquiry, a reviewing court must "consider . . . whether the affidavit[] supporting the [magistrate's] finding of

Motion to suppress - 9

1  probable cause, 'once corrected and supplemented, would provide a reviewing judge with a

2  substantial basis for concluding that probable cause existed.'" *United States v. Meling*, 47 F.3d 1546,

3  1554 (9th Cir. 1995) (quoting *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985)); see also

4  *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) ("If the officer omitted facts required

5  to prevent technically true statements in the affidavit from being misleading, the court determines

6  whether the affidavit, once corrected and supplemented, establishes probable cause."). The probable

7  cause standard "protects citizens from rash and unreasonable interferences with privacy and from

8  unfounded charges of crime, while giving fair leeway for enforcing the law in the community's

9  protection." *Maryland v. Pringle*, 540 16 U.S. 366, 370 (2003). Probable cause is a "fluid concept-

10  turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully,

11  reduced to a neat set of legal rules." *Id*. at 371. It is a concept "incapable of precise definition" which

12  depends on the "totality of the circumstances." *Id*.

13  

14  In this case, given the totality of the circumstances, probable cause was not established.  The

15  only critical fact not in dispute is that Alloway bought a number of firearms over a period of years and

16  sold 4 firearms without a license.  What is in dispute is whether he did that while engaging in a business.

17   Each of the factual misrepresentations or omissions in the affidavit went directly to the heart of that

18  issue.  Without evidence to support the notion that Alloway was selling for the purpose of  livelihood or

19  profit, there was no probable cause for the search warrant, since there was no crime.

20  To establish that there was a livelihood or profit purpose, it was critical to show some of the

21  following: the cost basis of goods sold, the volume of sales, prices, profits, and attempts to sell at any

22  opportunity.  The omissions in the affidavit go directly to those critical elements, such as the December

23  2009 meeting where Alloway declined a special order.  The affidavit makes claims that are provably

**Motion to suppress - 10**

**ROBERT W. GOLDSMITH**
*Attorney at law*
705 Second Ave.
Seattle, WA  98104
(206) 623-2800

false, such as the supposition that Alloway is buying at cost.  These are not trivial mistakes.  The probable cause for the search warrant was that Alloway was running a "business," and the factual omissions and misstatements were key to establishing that theory.  Even the 'slight' misstatement that "some of his firearms are used" implies that he also sold brand new firearms.  This painted a false picture in context with the rest of the falsehoods and omissions.

### D.  THE SECOND SEARCH WARRANT DOES NOT HAVE ANY SUPPORT FOR PROBABLE CAUSE.

The affidavit was signed on November 17, 2010, at 3:45 p.m., but the second warrant was not signed until November 18, 2010 at 6 p.m.  The first warrant was executed at 1600 (4 p.m.) on the 18th of November, about two hours before the second warrant was signed.  Thus any seizure of firearms pursuant to the second warrant is unsupported by the basic requirement the Constitution imposes: probable cause. Hence under the Fourth Amendment this was an unreasonable search of Alloway's home and for this reason the firearms seized under the second warrant must be suppressed.

### CONCLUSION

At a minimum, we have set forth a sufficient factual basis for this Court to conduct a *Franks* hearing.  We also suggest that once the Court eliminates the false and conjectural allegations and adds the omitted information, then it will conclude that the affidavit did not establish probable cause.  Therefore, this Court should suppress all evidence seized from Alloway's home and property at 9468 Phillips Rd. SE, Port Orchard, WA, done on November 18, 2010, and all fruits thereof.  *Wong Sun v. U.S.*, 371 U.S. 471, 488 (1963)(evidence suppressed flowing from "exploitation of that illegality.")

**Motion to suppress - 11**

ROBERT W. GOLDSMITH
*Attorney at law*
705 Second Ave.
Seattle, WA  98104
(206) 623-2800

DATED this 23rd day of August, 2011

_/s/ R. Goldsmith_____
Robert Goldsmith, WSBA # 12265
Email: Bobgoldsmith2@juno.com
Attorney for defendant

CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of Aug., 2011, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent electronically to the

Assistant U.S. Attorneys, counsel of record for the Government, and counsel for codefendants.

DATED this 23rd day of Aug., 2011.

_/s/ R. Goldsmith_____
Robert Goldsmith, WSBA # 12265
Email: Bobgoldsmith2@juno.com
Attorney for defendant

**Motion to suppress - 12**