Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROY ALLOWAY, ) <br> ) <br> Defendant. ) <br> ) | NO. CR11-5233RBL <br><br> **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED DURING SEARCH WARRANT** |

## I. INTRODUCTION

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Bruce F. Miyake, Assistant United States Attorney for said District, files this response to defendant's motion to suppress evidence seized during execution of a search warrant. (See Dkt. No. 23). In his motion, the defendant, Roy Alloway, argues that the affidavit in support of the search warrant contained misstatements and falsehoods. He reasons that if those misstatements are corrected there is not probable cause to support the search warrant. Alternatively, the defendant requests that this Court hold a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978). As discussed below his motion should be denied.

## II. BACKGROUND FACTS

Beginning in approximately May 2009, the Bureau of Alcohol, Tobacco, Firearms (ATF), and Explosives initiated an investigation into individuals suspected of unlawful firearms dealing at various local gun shows. Due to the defendant, Roy Alloway's, high

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 1
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

volume of purchase and sale of guns, the ATF suspected the defendant to be unlawfully dealing firearms.

During this investigation, members of the ATF, acting undercover, attended a number of gun shows and purchased firearms from various individuals including Alloway. On three different occasions, undercover ATF agents bought four guns from Alloway.

As a result of the investigation, on November 17, 2010, ATF Special Agent Heidi Wallace, applied for a search warrant for Alloway's residence. Magistrate Judge Richard Creatura issued the search warrant. (See MJ10-5191).[1]

On November 17, 2010, the ATF served the search warrant on Alloway's residence. During the search they recovered approximately forty firearms. Thirty of the firearms were in cases with attached price tags. The other ten firearms were located in a gun safe. The agents also located a notebook which had four columns: one column was for the description of firearm, one column was marked "P" which is believed denote purchase price of the firearm, one column was marked "S" which is believed to denote the sales price of the firearm, and the last column was marked "N" which is believed to denote the net profit made on the sale of the firearm. The agents also recovered the original warning letter from the ATF, dated September 30, 2005, which was sent to Alloway and notes of Alloway's meeting with Special Agent Brad Devlin of ATF regarding his multiple gun purchases.

### III. ARGUMENT

Alloway argues that Special Agent Wallace's affidavit contained misstatements and omissions which was done to manipulate inferences to establish probable cause that Alloway was involved in unlawful firearms dealing. He lists twelve misstatements,

---

[1] Under the search warrant issued under MJ10-5191-03 the agents were authorized to look for documents and other items related to unlawful firearms dealing. During the service of this search warrant, the agents observed a number of firearms. Based upon the observations, the ATF applied for a second search warrant allowing them to seize the firearms. See MJ10-5194. When Special Agent Wallace did the search warrant returns she mistakenly believed that the search warrant issued under MJ1-5194 was simply an amendment to 5191 and therefore did not do a separate return.

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 2
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

omissions, or misleading conclusions.  Based upon the alleged misstatements and omissions he argues that he is entitled to a *Franks* hearing.  He argues that the affidavit, cured of the inaccuracies, lacks probable cause to show that he was engaged in unlawful firearms dealing.

Alloway's motion fails to establish a showing of deliberate falsehoods or reckless disregard for the truth needed to justify a *Franks* hearing.  Additionally, any inaccuracies are not material to a finding of probable cause.

**A.     Unlawful Firearms Dealing**

A person who engages in the "business of selling firearms" must have a federal firearms license.  18 U.S.C. § 922(a)(1).  Section 922(a)(1) states in pertinent part: "It shall be unlawful . . . for any person except a . . . licensed dealer to engage in thebusiness of dealing in firearms . . ."

The term "engage in the business of" is defined as:

> . . . a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby or who sells all or part of a personal collection.

18 U.S.C. § 921(c).

The term "principal objective of livelihood and profit" means:

> . . . that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided*, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

18 U.S.C. § 921(a)(22).

Special Agent Wallace's affidavit set forth the above legal standard for violating Section 922.  *See* ¶¶ 4-6 *Affidavit of Heidi Wallace in support of issuance of search warrant*.

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 3
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**B.     Alloway has failed to establish the high threshold to justify *Franks* hearing.**

An affidavit in support of a search warrant is accorded a "presumption of validity" *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). Only in certain narrow circumstances may a defendant challenge the factual statements of an affiant in an affidavit supporting the issuance of a search warrant. *United States v. Chesher*, 678 F.2d 1353, 1360 (9th Cir. 1982). A defendant is entitled to an evidentiary hearing only in the rare circumstance when he (1) makes a substantial preliminary showing that the affidavit contains a false statement which was knowingly and intentionally made, or with reckless disregard for the truth, and (2) the false statement is necessary to a finding of probable cause. *Franks*, 438 U.S. at 155-56; *United States v. Prime*, 431 F.3d 1147, 1150 n.1 (9th Cir. 2005) ( "In order to receive a *Franks* hearing, the defendant must make a non-conclusory and substantial preliminary showing that the affidavit contained actual falsity [or an omission], and that the falsity either was deliberate or resulted from reckless disregard for the truth.") (internal quotations omitted); *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995) (extending analysis to omissions).

A defendant alleging a *Franks* violation "bears the burden of proof and must make a substantial showing to support *both* elements." *Chavez-Miranda*, 306 F.3d at 979 (emphasis added). Therefore, if the defendant fails to make a "substantial preliminary showing" of either intentional or reckless inclusion or omission, or materiality, the district court should not conduct a *Franks* hearing. *See United States v. Shryock*, 342 F.3d 948, 976-77 (9th Cir. 2003) (denial of hearing would have been correct, even if affidavit contained the alleged misleading statements and omissions, because they were not required for the finding of necessity); *Bennett*, 219 F.3d at 1124-25 (proper to refuse *Franks* hearing where defendant satisfied recklessness requirement but did not show materiality).

In *Franks*, the Supreme Court "was careful . . . to avoid creating a rule which would make evidentiary hearings into an affiant's veracity commonplace, obtainable on a bare allegation of bad faith. It crafted, therefore, a rule of very limited scope." *United*

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 4
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

*States v. Chesher*, 678 F.2d 1353, 1360 (9th Cir. 1982). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

Only when a defendant is able to make such a showing should the district court hold an evidentiary hearing. At that hearing, if the court finds by a preponderance of the evidence that the affidavit contained false statements necessary to a finding of probable cause, the search warrant must be voided and the evidence suppressed. *Franks*, 438 U. S. at 156.

In order to meet the threshold for a hearing, the defendant must make more than conclusory statements. His allegations must be supported by more than a mere desire to cross-examine. *Franks*, 438 US. at 171. The defendant must specify the portions of the affidavit which are false and provide support for the allegations such as affidavits. *Id*. at 171.

Even upon showing that false information is included in the affidavit, a defendant must also demonstrate that the alleged falsity or omission is material. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002). A false inclusion or an omission must be material to the finding of probable cause. *Meling*, 47 F.3d at 1553; *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000).

In determining whether an affiant has acted with reckless disregard for the truth, the defendant must make a showing that the affiant had a high degree of awareness of probable falsity of his/her statement. *United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1998); *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (reckless disregard occurs when the officer "entertained serious doubts as to the truth of his allegations"). On the other hand, false information resulting from negligence or innocent mistake are insufficient to warrant a hearing. *Franks* 458 U.S. at 171; *United States v. Motz*, 936 F.2d 1021, 1024 (9th Cir. 1991) ( it was deemed a negligent mistake when affiant omitted that informant was involved in a law suit against suspect, affiant thought

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 5
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

informant's reason for cooperating did not need to be included); *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988) (misstatement that defendant had multiple drug convictions when in fact he only had one was negligent because affiant did not know how to read California rap sheet).

Here, Alloway has not made the substantial preliminary showing necessary to justify a *Franks* hearing.  First, other than his speculation, Alloway has not shown that any misstatements were done intentionally or with reckless disregard for the truth.  Second, Alloway has not shown that the affidavit, corrected of any misstatements, fails to establish probable cause.

**C.     Allegations**

**1.     Allegations One and Two.**

Of the twelve alleged inaccuracies listed only two are incorrect: (Allegation 1) the date of the initial meeting with Special Agent Brad Devlin was not in mid 2006 but rather March 2005 (see ¶ 52 of *Wallace Affidavit*); and (Allegation 2) Alloway did not sign the original Federal Firearms application for Renegade Firearms (see ¶ 53 of *Wallace Affidavit*).

Neither of these misstatements are material to probable cause.  There is no question that Special Agent Brad Devlin contacted Alloway and Troy Witorek to speak with them about their high volume of purchases of firearms and ATF's concern they were unlawfully dealing.  It is no consequence that the meeting took place a year earlier.  This misstatement was negligent mistake and not done to intentionally mislead the magistrate.

Likewise with the FFL application.  There is no dispute that initially Witorek and Alloway were partners in Renegade Guns.  Though Alloway did not sign the application, he was listed as an owner and went through the application process along with Witorek wherein he was advised of various ATF regulations and the laws regarding the sale of firearms.

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 6
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**2.     Allegation Three.**

Alloway argues that Special Agent Wallace's conclusion that he knew that his actions of repeatedly purchasing firearms to sell was unlawful is not true.

An agent applying for a search warrant is entitled to make rationally based conclusions. Here, Special Agent Wallace noted that Alloway purchased a number of firearms from/through Renegade Guns. He bought these guns in his individual capacity. In each of these transactions Alloway filled out an ATF form 4473. Every time Alloway filled out this form he acknowledged that he knew that "repetitive purchases of firearms for the purpose of resale for livelihood and profit without a federal firearms license is a violation of law." See ¶ 58, *Wallace Affidavit in Support of Search Warrant.*

Special Agent Wallace's conclusion that she believed that acknowledging the notice in form 4473 put Alloway on notice that repetitive sales of firearms for a profit or livelihood was correct. While one may quibble about how Alloway interpreted his actions, there is no question he knew that repetitive sales of firearms for a profit was illegal. It was not an unfair or untrue conclusion under the instant circumstances.

Further, there is no dispute that Alloway knew that selling firearms for livelihood and profit was illegal.

**3.     Allegation Number Four.**

Alloway complains that in paragraph 59 of the affidavit, Special Agent Wallace misrepresented that Alloway was selling only used firearms. This is not true. In her affidavit, Special Agent Wallace details the July 18, 2009, purchase of a firearm by an undercover ATF agent. She correctly notes that when asked about the firearms Alloway stated that some of his firearms were used and others were "like new."

The difference between the wording of the affidavit and the undercover agent's report is inconsequential. They both relate the same information using slightly different language. The difference of language is not material to a finding of probable cause.

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 7
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**4.   Allegation Numbers Five, Six, and Seven.**

In each of these allegations, Alloway complains that the affidavit omitted that the asking price of the firearms and did not mention that the actual price paid was less than the asking price. While true the affidavit does not contain the original asking price, he fails to explain why this omission is significant or misleading. Apparently, he believes that because he sold the firearms for less than the asking price it undermines whether he was selling for a profit.

It is common knowledge that a seller of used goods will often negotiate with the buyer and agree to sell the item at less than the asking price. This does not mean that the seller did not make a profit or intend to make a profit.

Here, the omission of this information is not material and not pertinent to probable cause. These undercover purchases showed that Alloway was routinely at the gun shows offering multiple guns for sale. This combined with his high volume of gun purchases supports the conclusion that he is engaging in the business of dealing firearms.

**5.   Allegation Eight.**

Alloway complains that the affidavit did not contain his December 5, 2009, interaction with the undercover agent wherein he claimed he did not take special orders. While this information was not included it is certainly not material to probable cause. There is no dispute that Alloway was purchasing a large volume of guns and routinely going to the local gun shows to sell guns. The inclusion of this information would not undermine a finding of probable cause.

**6.   Allegation Nine.**

In paragraph 65 of her affidavit Special Agent Wallace noted that the firearm purchased on October 24, 2009, had only been acquired by Alloway 16 days earlier on October 8, 2009, through Renegade Guns. She properly stated that the quick turn around of this firearm is an "indication" that he was doing the same with the other firearms he obtained through Renegade. Alloway argues this inference is spurious.

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 8
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Special Agent Wallace's conclusion was proper. There is no dispute that Alloway purchased many guns through Renegade. The ATF found records that since 2006 Alloway obtained 163 guns through Renegade. The quick turn around of the firearm sold on October 24, 2009, is solid evidence that Alloway was purchasing guns to sell and not for his collection.

**7.     Allegations Ten and Eleven.**

Special Agent Wallace's conclusion that Alloway was purchasing firearms through Renegade Guns to sell at the gun shows was rationally based upon the information obtained during the investigation and referenced in the affidavit.

The ATF learned that Alloway frequented gun shows and that he displayed a large number of firearms for sale. Agent Wallace had obtained information that the firearm purchased from Alloway on October 24, 2009, had recently been purchased by Alloway only 16 days earlier. Further, the agents had observed Alloway sell a gun from his table and then replace the empty spot on the table with another firearm. *See* ¶ 67 footnote 7, *Wallace Affidavit in Support of Search Warrant*.

This information, along with Special Agent Wallace's training and experience supported the conclusion that Alloway's behavior was not consistent with the sale of firearms from one's personal collection.

**8.     Allegation Twelve.**

Alloway claims that contrary to the affidavit, he was not receiving the firearms through Renegade at a cheaper price. *See*, ¶ 68, *Wallace Affidavit in Support of Search Warrant*. Paragraph 68 states:

> Other individuals investigated for dealing without a license rarely had the firearms totals that ALLOWAY had on his table at the gun show. I believe this is true for two reasons. First, ALLOWAY has easier access to guns through the FFL which has helped him funnel firearms from the shop to his "private sale" booth at a greater pace. The second reason that ALLOWAY is using the FFL to his advantage is because of the price margin. When the FFL takes in a firearm, they will do so for an amount that will allow them to make a profit when they resell it. With ALLOWAY purchasing so many guns through his FFL, he most likely is not paying more than the shop paid someone to acquire the firearms since he is technically part of the shop. This allows ALLOWAY to make a profit easier than he would if he bought a firearm from a different FFL. I am not aware of any

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 9
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

businesses that ALLOWAY may be associated with where he could store firearms, documents, or business records pertaining to the sale or acquisition of firearms.

All of the information in the above paragraph is true. Compared to the other targets of the investigation, Alloway had the highest number of firearms available for sale. Special Agent Wallace's conclusion that she believed that Alloway had so many guns was because he had easier access to guns through his association with Renegade Guns. This conclusion was supported by the records which established that Alloway had obtained approximately 163 firearms through Renegade.

Special Agent Wallace did not state that Alloway was receiving the firearms at cost. She stated that she believed that he was "most likely" obtaining the guns at a favorable price. This assertion is true.

A subsequent review of records showed that many of the guns Alloway obtained through Renegade were purchases he made from Dave's Guns, another FFL. Alloway had an arrangement where he would purchase the firearms at Dave's. These guns would be shown on Dave's books as being transferred to Renegade Guns as a dealer to dealer transaction. Alloway would record the guns on Renegade's books and show them as being transferred to himself.

Since these transactions were deemed dealer to dealer, Dave's Guns did not charge Alloway sales tax. Thus, Alloway was able to obtain the firearms without having to pay sales tax. This resulted in obtaining the guns at a discount.

**D. None of the Alleged Misstatements are Material to Probable Cause.**

After correcting the affidavit of any misstatements, there is still probable cause that Alloway was engaged in unlawful firearms dealing.

As noted above, the proper procedure for determining whether the affidavit corrected of any misstatements still has probable cause is to "set the affidavit's false assertions to one side and then determine whether the affidavit's remaining content is still sufficient to establish probable cause." *United States v. Ippolito,* 774 F.2d 1482, 1485 (9th Cir.1985) (citing *Franks v. Delaware,* 438 U.S. 154, 156 (1978)). For material

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 10
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

omissions, the affidavit must simply be considered "with the omitted truths included." *United States v. Condo,* 782 F.2d 1502, 1506 (9th Cir.1986).  If the affidavit is not sufficient to establish probable cause with the material misstatements omitted, or with the omitted truths included, then the "warrant must be voided and the fruits of the warrant suppressed." *Ippolito,* 774 F.2d at 1485

Probable cause does not require proof beyond a reasonable doubt or even a preponderance of the evidence.  It merely requires the finding that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  In making this determination, the judicial officer is entitled to draw "reasonable inferences" based upon the information set forth in the affidavit. *Id.* at 241.

Here, as noted above, none of the alleged twelve misstatements individually or collectively undermine probable cause.

The affidavit establishes that in approximately 2005, due to his high volume of purchases of firearms, the ATF warned Alloway that he could be violating the law.  Subsequent to this meeting Alloway and Witorek obtained a FFL and opened Renegade Guns.  However, despite opening this gun shop, Alloway continued to purchase a high volume of firearms and attend gun shows where he had a large number of guns for sale.

From May 2009 through November 2009, the ATF attended numerous gun shows and observed Alloway present selling a large number of guns as a "private seller."  During this period of time they purchased four guns from Alloway.  Following one of the sales, Alloway provided the undercover agent a card which stated "Got Guns" with Alloway's telephone number.

A review of the records showed that since January 2005, Alloway purchased 263 firearms.  One of the firearms that Alloway purchased from Renegade guns he sold 16 days later at a gun show.

These facts establish a substantial basis for concluding that Alloway was engaged in the business of selling firearms without a license.

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 11
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

E. **Search Warrant Issued under MJ10-5194**

The search warrant issued under MJ10-5191-03 authorized the search for documents related to unlawful firearms dealing. It did not authorize the seizure of firearms. Upon entering the residence the agents located a number of firearms. At that point, the ATF sought a second search warrant to allow the seizure of the firearms. On November 18, 2010, Special Agent Julianne Marshall of the ATF presented a second search warrant to Magistrate Judge Creatura. After reviewing the affidavit, he issued a search warrant under MJ10-5194.

Special Agent Wallace made the search warrant returns for the two search warrants. However due to an oversight, the search warrant return for MJ10-5194 was not signed. The United States is working on correcting this mistake and when the matter is resolved will provide defense a copy of the affidavit which supported the issuance of the search warrant under MJ10-5194.

### IV. CONCLUSION

Alloway has failed to meet his substantial burden to justify a *Franks* hearing. He cannot show that any of the alleged misstatements was done intentionally to mislead or with reckless disregard for the truth. Further the affidavit cured of its misstatements still establishes probable cause. Alloway's motion should be denied.

DATED this 30th day of August, 2011.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

*s/Bruce F. Miyake*
BRUCE F. MIYAKE
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:   (206) 553-2077
Fax:              (206) 553-4986
E-mail:         bruce.miyake@usdoj.gov

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 12
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s). I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

s/JANET K. VOS
Janet K. Vos
Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-5041
FAX:   (206) 553-0755
E-mail:  Janet.Vos@usdoj.gov

GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS- 13
No. CR11-5233RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970