HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR11-5233RBL |
| Plaintiff, | ORDER |
| v. | |
| ROY ALLOWAY, | |
| Defendant. | |

THIS MATTER comes on before the above-entitled court upon Defendant's Motion to Suppress Evidence [Dkt. #23]. Having considered the entirety of the records and file herein, the Court finds and rules as follows:

## I. INTRODUCTION

The Defendant moves to suppress all evidence seized from his home and property, and the fruits thereof, during a search executed on November 18, 2010. He argues that the Affidavit in support of the search warrant presented by ATF Special Agent Heidi Wallace contained factual misrepresentations and omissions, without which the search warrant lacked probable cause. He seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). He also argues that a second search warrant issued on the day of the search was not based on probable cause.

ORDER- 1

## II. FACTS

Defendant Roy Alloway, a retired Bremerton Police Department Detective, is charged in a one-count Indictment with the Unlawful Dealing in Firearms in violation of 18 U.S.C. § 922(a)(1)(A). The Government alleges that Alloway was engaged in the business of dealing firearms without a license.

According to the Affidavit, Alloway and Troy Wiktorek, Sr., were contacted by an ATF Special Agent in mid-2006 and informed that based upon their large volume of purchases and sales of guns at gun shows, they were violating the law by dealing firearms without a license. Thereafter, in August 2006, Alloway and Wiktorek applied for a Federal Firearms License (FFL),[1] as a limited liability corporation known as Renegade Guns and Loans. They indicated on the application that they intended to sell new and used firearms for a profit, and indicated that they did not intend to use the license to acquire personal firearms. The license was issued in late 2006.

When a FFL sells a firearm, an ATF Form 4473 must be filled out. Also, because Renegade Guns and Loans was set up as an LLC owned by Wiktorek and Alloway, when Alloway purchases firearms for his personal collection from Renegade Guns, he must also fill out a Form 4473. Form 4473s are not required in private sales of firearms, i.e., sales of guns without a FFL. Private sales of firearms are not illegal so long as the seller is not in the business of selling guns for a living.

In approximately May 2009, ATF initiated an investigation into the unlawful dealing in firearms by individuals at local gun shows. Undercover agents attended gun shows and observed individuals selling guns. These individuals were private sellers of firearms. On three separate

---

[1] FFL is used to denote the Federal Firearms License and the Federal Firearms Licensee.

occasions, undercover agents bought four guns from Alloway in private sales at gun shows in Centralia and Puyallup. During these gun shows, Alloway had 40-60 firearms displayed.

The investigation revealed that between November 2006 and May 2010 Alloway purchased 163 firearms from Renegade Guns in his individual capacity, not as a FFL. Those purchases included 30 long guns acquired by Alloway between May 2009 and April 2010. Records reflected that since January 2005, Alloway purchased 224 handguns from Renegade Guns and other FFLs. The record also reflected that of the 163 firearms Alloway purchased from Renegade Guns, most were transferred to him within one day of acquisition by Renegade Guns. The gun purchased by the undercover agent at the Puyallup gun show on October 24, 2009 was acquired by Renegade Guns on October 8, 2009 and transferred to Alloway that same day.

## III. DISCUSSION

**A.  Law.**

This Court's review of the "validity of a search warrant depends on the sufficiency of what is found within the four corners of the underlying affidavit." *United States v. Taylor*, 716 F.2d 701, 705 (9th Cir. 1983). The affidavit must establish probable cause to believe that contraband or evidence will be found at the place to be searched. Fed. R. Crim P. 41. Probable cause exists when, considering the "totality of the circumstances," an issuing judge can reasonably conclude that there is a "fair probability that contraband or evidence of a crime will be found at a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The issuing judge's finding of probable cause is entitled to great deference. *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990).

The affidavit need only establish "a reasonable nexus between the activities supporting probable cause and the locations to be searched." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991). "In making this determination, the [issuing judge] may rely on the conclusions of experienced police officers regarding where evidence is likely to be found." *Id*.

The question to be answered at a *Franks* hearing is whether the affidavit contained deliberately or recklessly false statements without which probable cause would not have existed. *Franks*, 438 U.S. at 156. The five prong test which must be met in order for a defendant to be entitled to a *Franks* hearing is set out in *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983) (citations omitted):

    a.    "[T]he defendant must make specific allegations that indicate the portions of the warrant claimed to be false";

    b.    "There must be a contention of deliberate falsehood or reckless disregard for the truth";

    c.    "The allegations must be accompanied by a detailed offer of proof, preferably in the form of affidavits";

    d.    "The offer of proof must challenge the veracity of the affiant, not that of his informant"; and

    e.    "[T]he challenged statements in the affidavit must be necessary to a finding of probable cause."

Omissions from an affidavit may also entitle a defendant to a *Franks* hearing if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentional or reckless misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. *United States v. Reeves,* 210 F.3d 1041, 1044 (9th Cir.), *cert.*

*denied*, 531 U.S. 1000 (2000).  If inclusion of the omitted facts would not have affected the probable cause determination, no *Franks* hearing is required.  *Id*.

**B.  November 17, 2009 Search Warrant Application.**

Alloway cites to twelve specific instances in the Affidavit where, he alleges, the Affiant misstates facts, misleads the issuing judge by creating inferences without factual support, and omits entirely material facts.  He argues that had the Affiant correctly stated the facts and included all the material facts, the Affidavit would not have provided probable cause to believe that he was "engaged in the business" of dealing in firearms without a FFL and thus violating 18 U.S.C. § 922(a)(1)(A).[2]

Alloway is correct that the Affidavit contained two misstatements of fact.  He met with an ATF agent who advised him that ATF was concerned that he was unlawfully dealing in firearms in March 2005, not, as the Affidavit provided, in mid-2006.  (*See* Affidavit, ¶52.)  It is also correct that he did not sign the FFL application for Renegade Guns and Loans.  (*See* Affidavit, ¶53.)

---

[2] Title 18 U.S.C. § 921 provides the following definitions:
    (11) The term "dealer" means (A) any person engaged in the business of selling firearms at wholesale or retail,
18 U.S.C. § 921(a)(11)(A).
    (21) The term "engaged in the business" means –
        (C) as applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms;
18 U.S.C. § 921(a)(21)(C).

These misstatements are not material to probable cause and Alloway cannot show that they were done intentionally or with reckless disregard of the truth.  It is undisputed that Alloway met with an ATF agent several years before these charges were brought.  The exact date of the meeting is inconsequential.  It is also not fatal to probable cause that Alloway did not sign the FFL application.  He was listed on the application as a co-owner of Renegade Guns, and he went through the application process where he was advised as to the laws regarding the sale of firearms.  (*See* Affidavit, ¶¶54-56.)  At most, these misstatements were the result of negligence or innocent mistake.  *Franks*, 458 U.S. at 171.

Alloway alleges that the conclusion in paragraph 58 of the Affidavit that he "knew" he was "engaging in the business" of dealing in firearms is false.  The Affiant, an experienced ATF agent, provided ample support in the Affidavit for the statement that Alloway "knew" he was "engaging in the business" of dealing in firearms.  Agents are entitled to make rational conclusions from the evidence based on their training and experience, and issuing judges are entitled to rely upon them in determining whether probable cause exists.  *See, e.g., Ocampo*, 937 F.2d at 490.  Furthermore, the agent's conclusion or opinion about what Alloway knew is not false or misleading because the issuing judge had the same information from the Affidavit that the Agent did and could reach his own conclusion about the extent of Alloway's knowledge.

Alloway alleges that the Affiant misrepresents the condition of the firearms he was selling.  At paragraph 59, the agent states "[Alloway] stated that some of the firearms were used, but others were in "like new" condition."  The undercover agent's report upon which this statement was based provides "Alloway stated his firearms were used, but some were in like new condition."  It would have been preferable if in the Affidavit the modifier "some" was placed before "others in like new condition" instead of before "of the firearms were used"; however, the

subtle change in phrasing from the report to the Affidavit does not alter the fact he was selling guns. The statement does not materially affect the basis for probable cause.

Alloway complains that by omitting the asking price for the guns and including only the final sales price, the Affiant misleads the issuing judge as to whether Alloway was making a profit, However, it is not uncommon for negotiations on price to occur at places where people are selling used (and even new) goods. Simply because negotiations occurred and the seller got less than his "advertised" price, does not undercut the idea that the seller made a profit or intended to make a profit. Even if the information about asking price was included in the Affidavit, probable cause is not affected. The asking price is simply not material to establishing probable cause to believe that Alloway was engaging in the business of selling firearms.

Likewise, the inclusion of information from the undercover agent that Alloway refused to take a special order for a firearm does not defeat probable cause.

Paragraph 65 of the Affidavit relates information about one weapon purchased from Alloway. Records revealed that the weapon purchased by an undercover agent on October 24, 2009, was acquired by Renegade Guns on October 8, 2009 and "transferred/sold" to Alloway that same day. The Affidavit then states: "This quick turnaround of the firearm by Alloway is an indication that other firearms (of the 163 total) he acquired from Renegade Guns and Loans are being sold in the same fashion." Alloway alleges this statement is "spurious."

To the contrary, this statement is true. The fact that one gun was quickly turned "<u>is an indication</u> that other firearms (of the 163 total)" were also quickly turned. (Emphasis added.) It does not say that all guns were sold this way, it merely states that the quick turnaround is a sign that some others may have been sold in the same way.

Alloway claims that the statement in the Affidavit that "attending every gun show and selling a high volume of firearms is not consistent with the sale of personal firearms from one's personal collection" is misleading. (Affidavit, ¶66.) He also claims that the allegation in paragraph 67 that all 40-60 guns displayed were for sale is also misleading.

The evidence provided in the Affidavit clearly supports these allegations. The agents observed him at multiple shows displaying more weapons than typical private sellers. They had the records to show how many weapons he purchased from Renegade Guns. Alloway was observed placing a gun on his table from space beneath the table to replace a gun he just sold. The argument that he was merely displaying his guns to show off his collection is not supported by any declaration or other evidence.

Finally, Alloway claims that the allegation that Alloway was purchasing firearms at cost is false. The Affidavit provides: "With Alloway purchasing so many guns through his FFL, he most likely is not paying more than the shop paid since he is technically part of the shop." Affidavit, ¶68.)

This statement is not false. It does not say that he is obtaining firearms at cost - - it says that he "most likely" is. Further, the conclusion that Alloway is probably getting a better deal than others is amply supported by the volume of guns he purchased and the close association he has with Renegade Guns.

**C. November 18, 2009 Search Warrant Application.**

There were two search warrants issued in this case. The first and the subject of the *Franks* challenge, was signed on November 17, 2009. It sought documents and other indicia that he was dealing in firearms. It did not authorize the seizure of firearms. Once the agents arrived to serve the warrant on November 18, 2009, they asked Alloway if there were firearms in the home. Alloway opened a gun safe and agents observed approximately 40 guns in the safe. The

ORDER- 8

agents thereafter sought a second search warrant which was obtained approximately two hours after the search began.

The second search warrant was based largely on the first and upon the agents' observation of the weapons.

## IV. CONCLUSION

Defendant's Motion to Suppress Evidence [Dkt. #23] is **DENIED**. He has failed to make the requisite showing for a *Franks* hearing. The November 17, 2009 search warrant Affidavit provided probable cause, and the November 18, 2009 search warrant relying on that Affidavit plus the agents' observations, was also supported by probable cause.

**IT IS SO ORDERED.**

The Clerk shall send uncertified copies of this order to all counsel of record, and to any party appearing pro se.

Dated this 3rd day of October, 2011.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE